

David H. Fromm
(DF-9334)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

Attorneys for The Central Bank of Nigeria

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CASECA AG,

               Plaintiff,

       -against-

THE CENTRAL BANK OF NIGERIA and
JP MORGAN CHASE & CO.,

              Defendants.
-------------------------------------------------------X

10- cv-

**DEFENDANT THE CENTRAL
BANK OF NIGERIA'S
NOTICE OF REMOVAL OF
CIVIL ACTION**

New York County Clerk's
Index No.: 115678/10

    TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK and TO ALL PARTIES
AND THEIR ATTORNEYS OF RECORD

    Defendant, THE CENTRAL BANK OF NIGERIA ("CBN"), which has not been

properly served in this action and is appearing solely to preserve its right to have this

action removed and to have all issues, including service of process, personal and subject

matter jurisdiction and venue, determined by a federal court, hereby petitions this Court

for removal of the above-captioned civil action from the Supreme Court of the State of

New York, County of New York, to the United States District Court for the Southern

District of New York pursuant to 28 U.S.C. §§ 1441(a), (b) and (d), and 1446(a), (b) and

(d).

    1.    The above-captioned civil action was originally filed in the Supreme Court

of the State of New York, County of New York, on or about December 2, 2010 and was

assigned Index No.: 115678/10.  A true and correct copy of the Request for Judicial

Intervention, Summons, Notice of Motion for Summary Judgment in Lieu of Complaint,

Affirmation of Richard H. Apat, Esq. and Affidavit of Dr. Leo Granziol with supporting

exhibits are attached hereto as Exhibit "A."

2.      The basis of original, exclusive subject matter jurisdiction over this action

is under the provisions of 28 U.S.C. §§ 1330 in that CBN, at all relevant times, was, and

is, an instrumentality of a foreign state as defined by the Foreign Sovereign Immunities

Act ("FSIA"), 28 U.S.C. § 1603.  *Verlinden B. V. v. Central Bank of Nigeria*, 647 F.2d

320, 322 n.4 (2d Cir. 1981) *rev'd on other grounds* 461 U.S. 480, 103 S. Ct. 1962, 76 L.

Ed.2d 81 (1983);  *Southway v. Central Bank of Nigeria*, 149 F. Supp. 2d 1268, 1272 (D.

Colo. 2001).

3.      The Court has removal jurisdiction of this action under 28 U.S.C. §§

1441(a), (b) and (d); and 1446(a), (b) and (d).

4.      Although CBN has not been properly served with process pursuant to

FSIA, 28 U.S.C. §§ 1608(b), this action is being removed now solely to preserve its right

to removal under the provisions of 28 U.S.C. § 1446(b).  Upon information and belief,

CBN first received notice of this action, at the earliest, on or about December 8, 2010,

and thus, this removal is timely.

5.      CBN does not admit or submit to any personal or subject matter

jurisdiction, or to venue or the propriety or convenience of this forum and expressly

preserves these issues for future challenge.  CBN also expressly preserves all service and

foreign sovereign immunity issues and defenses for future challenge, pursuant to FSIA,

28 U.S.C. §§ 1604-1605 and 1608.

6.     CBN has not moved or filed any responsive pleading to Plaintiffs' Notice of Motion for Summary Judgment in Lieu of Complaint.

7.     A filing fee of $350 has been tendered to the Clerk of this Court, all parties of record are being served with notice of this removal and such notice is being filed with the Clerk of the Supreme Court of the State of New York, County of New York.

8.     This notice is signed pursuant to Fed. R. Civ. P. 11.

WHEREFORE, CBN respectfully requests that the above-captioned action be removed from the Supreme Court of the State of New York, County of New York, in which it was filed, to the United States District Court for the Southern District of New York and for such and other further relief as the Court may deem just and proper.

Dated: New York, New York
       December 22, 2010

Respectfully submitted,

BROWN GAVALAS & FROMM LLP
Attorneys for Defendants,
The Central Bank of Nigeria

David H. Fromm
355 Lexington Avenue
New York, New York 10017
(212)983-8500

TO:    Richard H. Apat, Esq.
PEARLMAN, APAT, FUTTERMAN,
SIROTKIN & SIENFELD, LLP.
Attorneys for Caseca AG
80-023 Kew Gardens Road, Suite 5001
Kew Gardens, New York 11415
(718)261-9460

JP MORGAN CHASE & CO.
One Chase Manhattan Plaza
New York, New York 10081

# EXHIBIT A

*email Drew*
*Sue MCN.*

*Andrew Keen*
*430984*

## REQUEST FOR JUDICIAL INTERVENTION

SUPREME COURT, NEW YORK COUNTY

| Index No. 115678/10 | Date Purchased : 12/2/2010 |
|---|---|

| | |
|---|---|
| CASECA AG,<br><br>                    Plaintiff,<br><br>  - against -<br><br>THE CENTRAL BANK OF NIGERIA and<br>JP MORGAN CHASE & CO.,<br><br>                    Defendants. | FOR CLERK ONLY<br><br>────────────────<br>IAS ENTRY DATE<br><br>────────────────<br>JUDGE ASSIGNED<br><br>────────────────<br>R J I DATE |

| Date issue joined: | Bill of particulars served ( ) Yes (X) No |
|---|---|

NATURE OF JUDICIAL INTERVENTION (check ONE box only and enter information)

( )  Request for preliminary conference
( )  Note of Issue and/or certificate of readiness
(X)  Notice of motion (1/20/2011) Relief sought: Summons & Motion for Summary Judgment in Lieu
of Complaint
( )  Order to Show Cause (clerk enter return date _____)
( )  Other ex parte application (specify                    )
( )  Notice of petition (return date _____) Relief sought:
( )  Notice of medical or dental malpractice action (specify:           ).
( )  Statement of net worth
( )  Writ of habeas corpus
( )  Other (specify:               )

NATURE OF ACTION OR PROCEEDING (check ONE  box only)

**Legal Papers Served**
**(New York)**

DEC 0 8 2010

☐ Interoffice Mail      ☐ Certified Mail
☐ Federal Express      ☒ Hand Delivery
☐ Fax  ☐ U.S. Mail      ☐ Email  ☐ UPS
Reviewed by: _____ 10:55 AM

MATRIMONIAL
      ( )     Contested - CM
      ( )     Uncontested - UM

COMMERCIAL
      ( )     Contract - CONT
      ( )     Corporate - CORP
      ( )     Insurance (where insurer
is a  party, except arbitration ) ? INS
      ( )     UCC (including sales,
negotiable instruments) - UCC
      ( )      * Other Commercial - OC
─────────────────────

TORTS

  Malpractice
            ( )  Medical/Podiatric - MM
            ( )  Dental - DM
            ( )  *Other Professional - OPM
      ( )  Motor Vehicle - MV
      ( )  *Products Liability - PL
      ( )  Environmental - EN
      ( )  Asbestos - ASB
      ( )  Breast Implant - BI
      ( )  *Other negligence - OTN
      ( )  *Other Tort (including intentional) - OT

REAL PROPERTY
      ( )     Tax Certiorari - TAX
      ( )     Foreclosure - FOR
      ( )     Condemnation - COND
      ( )     Landlord/Tenant - LT
      ( ) *Other Real Property - ORP
OTHER MATTERS
      (X)     *- OTHER (Contract)

SPECIAL PROCEEDINGS

      ( )  Art. 75 (Arbitration) - ART 75
      ( )  Art. 77 (Trusts) - ART 77
      ( )  Article 78 - ART 78
      ( )  Election Law - ELEC
      ( )  Guardianship  (MHL Art. 81) - GUARD 81
      ( )  *Other Mental Hygiene - MHYG
      ( )  *Other Special Proceeding -

*If asterisk used, please specify further.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 115 678/10
Date filed: 12/2/10

-----------------------------------------------------------------X

CASECA AG,

Plaintiff,

- against -

THE CENTRAL BANK OF NIGERIA and
JP MORGAN CHASE & CO.,

Defendants.

-----------------------------------------------------------------X

SUMMONS

Plaintiff designate New York
County as the place of trial.

The basis of venue is:
Contract designates NYC
& Defendants' Business Address
at: JP Morgan Chase & Co., One
Chase Manhattan Plaza
New York, New York 10081
County of New York

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Notice of Motion for Summary
Judgment in Lieu of Complaint in this action, and to submit your answering papers on or before
January 20, 2011. In case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated:   Kew Gardens, New York
December   1  , 2010

Yours, etc.,

RICHARD H. APAT, ESQ.
PEARLMAN, APAT, FUTTERMAN,
SIROTKIN & SIENFELD, LLP.
Attorneys for Plaintiff
80-02 Kew Gardens Road, Suite 5001
Kew Gardens, New York 11415
(718) 261-9460

**DEFENDANT'(S) ADDRESS(ES):**

THE CENTRAL BANK OF NIGERIA
C/o Consulate General of Nigeria
828 Second Avenue
New York, New York 10017

THE CENTRAL BANK OF NIGERIA
C/o JP Morgan Chase & Co
Corporate Trust Administration
One Chase Manhattan Plaza
New York, New York 10081, USA

JP MORGAN CHASE & CO. (Fiscal Agent & Registrar)
Corporate Trust Administration
One Chase Manhattan Plaza
New York, New York 10081, USA

Legal Papers Served
(New York)

DEC 0 9 2010

☐ Interoffice Mail        ☐ Certified Mail
☐ Federal Express         ☒ Hand Delivery
☐ Fax   ☐ U.S. Mail       ☐ Email ☐ UPS
Reviewed by: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

CASECA AG,                                              NOTICE OF MOTION
                                                        FOR SUMMARY
                        Plaintiff,                      JUDGMENT IN LIEU
                                                        OF COMPLAINT
        -against-
                                                        Index No. _____
THE CENTRAL BANK OF NIGERIA and
JP MORGAN CHASE & CO,
                        Defendants.
------------------------------------------------------------------X

        PLEASE TAKE NOTICE that, upon the Summons dated December 1, 2010, and the

Affirmation of Richard H. Apat, Esq., dated November 23, 2010 and the Affidavit of Dr. Leo

Granziol, sworn to on November 16, 2010, with exhibits annexed thereto, a motion will be made to

this court at the Motion Submission Part, Room 130 thereof, at the Supreme Court, New York

County courthouse located at 60 Centre Street, New York, New York 10007, on the 20th day of

January, 2011, at 9:30am in the forenoon of that day, or as soon thereafter as counsel can be heard

for an Order granting summary judgment in lieu of complaint, pursuant to C.P.L.R 3213, in favor

of the plaintiff and against the defendants THE CENTRAL BANK OF NIGERIA and JP

MORGAN CHASE & CO for the sum of $232,263.16, together with all costs and disbursements

of this action upon the ground that this action is based upon an instrument for the payment of

money only and that there is no defense thereto, and for such and other further relief as the court

may deem just and proper; and

        The above-entitled action is brought to recover payment on promissory notes.

        Pursuant to N.Y. C.P.L.R. 2214(b), answering affidavits if any are required to be served

upon the undersigned at least seven days before the return date of this motion.

Dated:   Kew Gardens, New York              Respectfully submitted,
         December __, 2010

                                             _____
                                             RICHARD H. APAT, ESQ.
                                             PEARLMAN, APAT, FUTTERMAN
                                             SIROTKIN & SEINFELD
                                             80-02 Kew Gardens Road, Suite 5001
                                             Kew Gardens, New York 11415
                                             (718) 261-9460

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
CASECA AG,

                             Plaintiff,

             -against-

THE CENTRAL BANK OF NIGERIA and
JP MORGAN CHASE & CO,

                        Defendants.
----------------------------------------------------------------X

**AFFIRMATION IN
SUPPORT OF THE
MOTION FOR
SUMMARY
JUDGMENT IN LIEU
OF COMPLAINT**
Index No.  115678/10

      RICHARD H. APAT, an attorney duly licensed to practice law before the courts in the

State of New York affirms the following under penalty of perjury.

<h3 align="center">SUMMARY</h3>

      1.  This is a Notice of Motion in Lieu of Complaint to obtain payment on several

promissory notes. The defendant THE CENTRAL BANK OF NIGERIA issued promissory

notes to plaintiff on or about April 7, 1987. The final payment of interest on the eleven (11)

outstanding promissory notes in the total amount of $215,257.79 was payable on January 5, 2010

and has not been made. JP Morgan Chase & Co (f/n/a The Chase Manhattan Bank, N.A.) is the

Fiscal Agent for THE CENTRAL BANK OF NIGERIA and was responsible for actually making

these payments which they have refused to make.

<h3 align="center">JURISDICTION - APPLICABLE LAW - WAIVER OF IMMUNITY</h3>

      2.  Pursuant to paragraph 16 of the promissory note, see example of promissory note

annexed hereto as **Exhibit "A"**, the notes shall be governed by and construed in accordance with

English Law; the Central Bank and the Republic waive to the fullest extent possible all immunity

from suit, jurisdiction, execution and attachment and submits to the exclusive jurisdiction of the

High Court of Justice in England, the Courts of the State of New York and the courts of the United

States of America sitting in New York City. Finally the Central Bank and the Republic provide

that as long as any note remains outstanding that there shall be persons in London and New York

City duly appointed to accept service of process regarding the notes.

SUBSTANTIVE FACTS

3.   The actual promissory notes upon which payment has been sought have been lost; for a further discussion of the history of the issuance and loss of the notes, see the annexed affidavit of Dr. Leo Granziol, the sole director of Caseca AG.

4.   The defendants, THE CENTRAL BANK OF NIGERIA through their Fiscal Agent JP MORGAN CHASE & CO. has acknowledged and admitted by e-mail dated September 3, 2010 by William H. Lassiter of the Treasury & Security Services Dept., of JP Morgan Chase & Co., that the final payments for tax year 2010 is still on hold until JP Morgan Chase receives the original certificates or a surety bond (see **Exhibit "B"**).

5.   Additionally, Mr. Lassiter's e-mail on October 6, 2010 acknowledges that there is a final payment still due and the amount of said payment when he states: "your final payment amounts are highlighted in green" in the attached spreadsheet (see **Exhibit "B"** October 6, 2010 e-mail together with the spreadsheet) showing the outstanding total payments in the amount of $215,257.79.

6.   Pursuant to paragraph 2 of the notes (see **Exhibit "A"**) entitled FORM AND TITLE, the defendants are to treat the registered holder of the notes (CASECA AG) as the absolute "owner thereof" (not withstanding any notice to the contrary) for the purpose of making payment and for all other the purposes.   The entire paragraph is reproduced here.

2.   FORM AND TITLE

The notes are issued in registered form. **Title to the notes will pass by registration** in the Registrar (the "Registrar") maintained by the Registrar as its specified office in accordance with the Register Agreement.   The Central Bank, the Republic, the Trustee, the Fiscal Agent and the Registrar shall **treat the registered holder of any note as the** <u>absolute owner thereof</u> (not withstanding any notice to the contrary) for the purpose of making payments and for all other purposes. **(Emphasis supplied)**

transferred to Caseca because of a lack of foreign currency by The Central Bank of Nigeria.

Because of the reduction of crude oil production and the fall in oil prices starting from 1982 and hence the reduction of foreign exchange revenues, in 1984 Nigeria was unable to serve and repay foreign debts and, therefore, its foreign debts had been rescheduled through its Central Bank, and the creditors, including Caseca AG, received promissory notes from the Central Bank of Nigeria. Caseca AG received eleven such notes, in the total principal amount of $8,860,508 U.S. dollars.

Due to further deterioration of the Nigerian foreign exchange position on January 14, 1988 these notes were renegotiated by The Central Bank of Nigeria through their agent, Chase Bank at a meeting in the United Kingdom at the Wembley Conference Center in London with representatives of The Central Bank of Nigeria present as well as the various payees including Caseca AG.

It was stated that to gain admittance to the meeting, the previously issued notes had to be in possession of the various representative payees. The representative of Caseca AG was a Mr. Welsh. Shortly after the meeting was held, Mr. Welsh became terminally ill. It was discovered after his death that the original notes could not be located. This fact was promptly brought to the attention of Chase Bank, which it acknowledged on May 10, 1988, see **Exhibit "C."**

The Central Bank of Nigeria, through their fiscal agent, The Chase Manhattan Bank, N.A., had been making all payments on the notes as per the terms. The last instalment (including capitalized interest for the period until due date) on such eleven notes to be paid upon was due on January 5, 2010 in the amount of $215,257.79; however, this payment was not made and still remains outstanding.

6.  The defendant, The Central Bank of Nigeria, through its Fiscal Agent, the co-defendant JP Morgan Chase & Company acknowledges that the final payment on these final notes are outstanding in the amount of $215,257.79.  Specifically, JP Morgan Chase & Co., by their representative, William H. Lassiter of the Treasury and Security Services Department, indicated on October 6, 2010 that the final total payment outstanding is admittedly $215,257.79, see e-mail by William H. Lassiter in which he attaches the annexed spreadsheet containing the specific note numbers and amounts owed; (see **Exhibit "B"**)



7.      The defendant, The Central Bank of Nigeria, by its co-defendant, JP Morgan Chase & Co., has failed and refused to make the final payment since it became due on January 5, 2010, although your deponent has demanded payment verbally, through e-mail and letter.  See letter dated February 4, 2010 sent by DHL courier "**Exhibit D.**"

WHEREFORE, plaintiff respectfully requests an Order be entered granting Summary Judgment in the amount of $215,257.79 plus interest of $17,005.37 together with costs and disbursements of this motion and action and for such other and further relief as this court may deem just proper and equitable.

DR. LEO GRANZIOL
Director CASECA AG

Sworn to before me on this
16th day of November, 2010

ØLIVER HABKE
NOTARY PUBLIC



## APOSTILLE
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zug
   Country: Swiss Confederation, Canton of Zug
   Diese öffentliche Urkunde / This public document

2. ist unterschrieben von ...................................
   has been signed by *Oliver Habke*

3. in der Eigenschaft als ...................................
   acting in the capacity of *Notary public*

4. sie ist versehen mit dem Stempel/Siegel des/der / bears the stamp/seal of
   *Notary public of the Canton of Zug*

5. in / to 6300 Zug          6. am / the 17. Nov. 2010

Bestätigt / Certified

7. durch die Staatskanzlei des Kantons Zug
   by Chancery of State of the Canton of Zug

8. unter Nr. / under No. *12450/10*

9. Stempel/Siegel / Stamp/Seal

10. Unterschrift / Signature

Herbert Fischer

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
CASECA AG.

                              Plaintiff.

           -against-

THE CENTRAL BANK OF NIGERIA and
JP MORGAN CHASE & CO.

                            Defendants.
-------------------------------------------------------------------X

        **AFFIDAVIT IN**
        **SUPPORT OF MOTION**
        Index No.:

Bahnhofstrasse 32      )
                        )  ss.
Zug, Switzerland      )

    1.     Your deponent, Dr. Leo Granziol, submits this affidavit in support of this motion
seeking payment on certain promissory notes.

    2.     I am the sole member of the Board of Directors of Caseca AG, a Swiss corporation
formed and incorporated under Swiss law in 1969.

    3.     Caseca AG has brought this Motion to recover $215,257.79 in principal and
$17,005.37 in interest for a grand total of $232,263.16 on eleven promissory notes made by the
defendant. The Central Bank of Nigeria, between 16th September 1985 and 14th June 1987 to the
order of Caseca AG.

    4.     The actual promissory notes upon which payment is sought have been lost, a copy
of an example of the notes, with the same Terms and Conditions and issued by The Central Bank
of Nigeria to Caseca AG is annexed hereto as **Exhibit "A."**

    5.     The history of the issuing of these notes and how they were lost is as follows:

Caseca AG has done business with Nigerian companies for many years, most of
which involved its serving as an agent for Nigerian companies in connection with
the sale of cooling systems, automobiles and automotive parts. In connection with
this work. Caseca also provided prefinancing of imports, therefore. Caseca always
had money outstanding from the Nigerian customers.  The Nigerian customers
would sometimes pay their local bank, however, the money was not immediately



transferred to Caseca because of a lack of foreign currency by The Central Bank of Nigeria.

Because of the reduction of crude oil production and the fall in oil prices starting from 1982 and hence the reduction of foreign exchange revenues, in 1984 Nigeria was unable to serve and repay foreign debts and, therefore, its foreign debts had been rescheduled through its Central Bank, and the creditors, including Caseca AG, received promissory notes from the Central Bank of Nigeria.  Caseca AG received eleven such notes, in the total principal amount of $8,860,508 U.S. dollars.

Due to further deterioration of the Nigerian foreign exchange position on January 14, 1988 these notes were renegotiated by The Central Bank of Nigeria through their agent, Chase Bank at a meeting in the United Kingdom at the Wembley Conference Center in London with representatives of The Central Bank of Nigeria present as well as the various payees including Caseca AG.

It was stated that to gain admittance to the meeting, the previously issued notes had to be in possession of the various representative payees.  The representative of Caseca AG was a Mr. Welsh.  Shortly after the meeting was held, Mr. Welsh became terminally ill.  It was discovered after his death that the original notes could not be located.  This fact was promptly brought to the attention of Chase Bank, which it acknowledged on May 10, 1988, see **Exhibit "C."**

The Central Bank of Nigeria, through their fiscal agent, The Chase Manhattan Bank, N.A., had been making all payments on the notes as per the terms.  The last instalment (including capitalized interest for the period until due date) on such eleven notes to be paid upon was due on January 5, 2010 in the amount of $215,257.79; however, this payment was not made and still remains outstanding.

6.  The defendant, The Central Bank of Nigeria, through its Fiscal Agent, the co-defendant JP Morgan Chase & Company acknowledges that the final payment on these final notes are outstanding in the amount of $215,257.79.  Specifically, JP Morgan Chase & Co., by their representative, William H. Lassiter of the Treasury and Security Services Department, indicated on October 6, 2010 that the final total payment outstanding is admittedly $215,257.79, see e-mail by William H. Lassiter in which he attaches the annexed spreadsheet containing the specific note numbers and amounts owed: (see **Exhibit "B"**)

7.     The defendant, The Central Bank of Nigeria, by its co-defendant, JP Morgan Chase & Co., has failed and refused to make the final payment since it became due on January 5, 2010, although your deponent has demanded payment verbally, through e-mail and letter.   See letter dated February 4, 2010 sent by DHL courier "**Exhibit D.**"

WHEREFORE, plaintiff respectfully requests an Order be entered granting Summary Judgment in the amount of $215,257.79 plus interest of $17,005.37 together with costs and disbursements of this motion and action and for such other and further relief as this court may deem just proper and equitable.

DR. LEO GRANZIOL
Director CASECA AG

Sworn to before me on this
16th day of November, 2010

OLIVER HABKE
NOTARY PUBLIC



### APOSTILLE
(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zug
   Country: Swiss Confederation, Canton of Zug
   Diese öffentliche Urkunde / This public document

2. ist unterschrieben von ................................................
   has been signed by *Oliver Habke*

3. in der Eigenschaft als ................................................
   acting in the capacity of *Notary public*

4. sie ist versehen mit dem Stempel/Siegel des/der / bears the stamp/seal of
   *Notary public of the Canton of Zug*

Bestätigt / Certified

5. in / to 6300 Zug     6. am / the 17 Nov. 2010

7. durch die Staatskanzlei des Kantons Zug
   by Chancery of State of the Canton of Zug

8. unter Nr. / under No. *124501/10*

9. Stempel/Siegel / Stamp/Seal        10. Unterschrift / Signature

Herbert Fischer

# EXHIBIT A

THIS NOTE MAY NOT BE SOLD OR TRANSFERRED
EXCEPT IN COMPLIANCE WITH CONDITION 3
ENDORSED HEREON

REGISTERED                                                                    REGISTERED

NUMBER
RB    9446                                                            *420547*



# THE CENTRAL BANK OF NIGERIA
## U.S. DOLLAR NOTE

Guaranteed irrevocably and unconditionally by The Federal Republic of Nigeria

THE CENTRAL BANK OF NIGERIA promises to pay to

```
RB   009446      10553 00 CASECA A G       420547********
     0407        INDUSTRIESTRASSE 11       *420547******
1  0001911       CH-6300 ZUG               **420547*****
1055300-C        SWITZERLAND               ***420547****
AAG--0000                                  ****420547***
```

the principal sum of   ***FOUR HUNDRED TWENTY THOUSAND FIVE HUNDRED FORTY SEVEN***      U.S. Dollars

in fourteen equal quarterly instalments commencing on 5th October, 1986 together with interest on such principal sum on the dates determined in accordance with Condition 4 of the Terms and Conditions endorsed hereon (the "Conditions") in arrears on 5th October, 1984 and thereafter, quarterly in arrears on each 5th January, 5th April, 5th July and 5th October subject to and in accordance with the Conditions. Payment of principal and interest (including additional amounts payable under Condition 9) in respect of this Note has been irrevocably and unconditionally guaranteed by The Federal Republic of Nigeria.
    IN WITNESS whereof the Central Bank of Nigeria has caused this Note to be signed in facsimile on its behalf by its Governor.

DATED    04/07/87

CENTRAL BANK OF NIGERIA

BY

If the holder of this note is a United States person, this Note has been acquired for investment (or, if the holder is a bank, acquired in the ordinary course of such holder's commercial banking business) and not with a view to, or in connection with, the sale or distribution thereof. This Note has not been registered under the United States Securities Act of 1933. No sale or disposition of this Note may be effected in the United States or to a United States person without the prior written consent of the Central Bank and an opinion of counsel that such registration is not required under the United States Securities Act of 1933. As used in this Note, "United States" means the United States of America, its possessions, its territories and all areas subject to its jurisdiction; "United States person" means any person who is a citizen, national or resident of the United States (including the estate of any such person and any corporation, partnership or other entity created or organized in or under the laws of the United States or any political subdivision thereof or any trust or estate that is not, as to the United States, a foreign trust or estate).



GOVERNOR

# TERMS AND CONDIT

This Note is one of a series of U.S. dollar Notes (the "Notes") issued by the Central Bank of Nigeria (the "Central Bank"), and guaranteed by the Federal Republic of Nigeria (the "Republic"), pursuant to a Supplemental Trust Deed (the "Supplemental Trust Deed") dated 19th January, 1985 which Supplemental Trust Deed is expressed to be supplemental to a Trust Deed (the "Original Deed") dated 15th May, 1984 both entered into between the Central Bank, the Republic and The Law Debenture Trust Corporation p.l.c. (the "Trustee" which expression shall include, where the context so admits, include such company and all other companies or persons for the time being trustee or trustees thereof). The Original Deed and the Supplemental Trust Deed are hereinafter together referred to as the "Trust Deed". The Trustee acts as trustee for the holders for the time being of the Notes (the "Noteholders") in accordance with the provisions of the Trust Deed. The Notes are issued subject to, and with the benefit of, a Fiscal Agency Agreement dated 15th May, 1984 as amended (the "Fiscal Agency Agreement") made between the Central Bank, the Republic, the Trustee and The Chase Manhattan Bank, N.A. (the "Fiscal Agent" which expression shall include any successor or successors of The Chase Manhattan Bank, N.A. as Fiscal Agent) in accordance with the Fiscal Agency Agreement) and a Registrar and Transfer Agency Agreement dated 15th May, 1984 as amended (the "Registrar Agreement") made between the Central Bank, the Republic, the Trustee, the Fiscal Agent and The Chase Manhattan Bank, N.A. (the "Registrar" which expression shall include any successor or successors of The Chase Manhattan Bank, N.A. as Registrar in accordance with the Registrar Agreement). The Noteholders are entitled to the benefit of, are deemed to have notice of, and are bound by, the provisions of the Trust Deed, the Fiscal Agency Agreement and the Registrar Agreement. Copies of the Original Deed, the Supplemental Trust Deed, the Fiscal Agency Agreement and the Registrar Agreement are available for inspection at the principal office of the Trustee being at the date hereof at Princes House, 95 Gresham Street, London EC2V 7LY and at the specified office of the Fiscal Agent set out below. References in these Conditions to "dollars" and to the sign "$" are references to United States Dollars.

1. **STATUS AND GUARANTEE**

   The Notes are unconditional and unsecured obligations of the Central Bank and rank without preference or priority among themselves and pari passu with all other unsecured and unsubordinated obligations of the Central Bank, present and future.

   The due and punctual payment of all sums expressed to be payable under this Note (and any additional amounts payable under Condition 9) is unconditionally and irrevocably guaranteed by the Republic under the provisions of the Trust Deed. The guarantee of the Republic is an unconditional (save for demand upon the Republic) and unsecured obligation of the Republic and ranks pari passu with all other unsecured and unsubordinated obligations of the Republic, present and future.

2. **FORM AND TITLE**

   The Notes are issued in registered form. Title to the Notes will pass by registration in the register (the "Register") maintained by the Registrar at its specified office in accordance with the Registrar Agreement.

   The Central Bank, the Republic, the Trustee, the Fiscal Agent and the Registrar shall treat the registered holder of any Note as the absolute owner thereof (notwithstanding any notice to the contrary) for the purpose of making payments and for all other purposes.

3. **TRANSFER OF NOTES**

   (a) This Note may be freely transferred (subject only to the restriction appearing on its face).

   (b) Transfers of Notes may be effected at the specified office of the Registrar upon payment to the Registrar of its service charge and any taxes and other governmental charges and upon the Registrar being reasonably satisfied with the documents of title and the identity of the person(s) making the request for transfer. Notes may be transferred in whole or in part by the holder thereof surrendering the Note for transfer and registration at the specified office of the Registrar with the form of transfer on the reverse of the Note duly completed and executed.

   (c) The Registrar will, within five business days of such request, despatch by mail (at the risk of the transferee) to such address as the transferee may request, a new Note in the name of the transferee in respect of the Note transferred. In the case of a transfer of part only of a Note a new Note in the name of the transferor in respect of the balance of the Note transferred will be despatched by mail (at the risk of the transferor) to the address (the "registered address") of the transferor appearing in the Register.

   (d) Under no circumstances will the Central Bank or the Registrar be required to register the transfer of Notes during the period of 15 days next preceding each Payment Date (as defined below).

   (e) In this Condition 3 "business day" means a day upon which banks are open for business in New York City and (if at any time the specified office of the Registrar is not in New York City) in the city of the specified office of the Registrar.

4. **PAYMENT DATES AND DEFAULT INTEREST**

   In this Condition 4 the expression "business day" means a day upon which banks and foreign exchange markets are open for business in London and New York City.

   (a) *Payment on business days*

   Payment dates for the purposes of the Notes shall be 5th January, 5th April, 5th July and 5th October in each year (each a "Payment Date") commencing 5th April, 1985 and ending with 5th January, 2010 provided that if any Payment Date would otherwise fall on a day which is not a business day it shall be postponed to the next succeeding business day.

   (b) *Late Issue of Notes*

   If a Note is issued on or after the fifteenth day prior to 5th April, 1985, otherwise than in substitution (or a note constituted by the Original Deed, all payments which would otherwise have fallen due under this Note had it been issued prior to such date will be made on the Payment Date next following the date of actual issue of such Note (or if such Note is issued within a period of fifteen days prior to a Payment Date on the immediately following Payment Date).

   (c) *Default Interest*

   (i)     in any case where payment of the whole or any part of any amount due in respect of any Note is improperly withheld or refused on the due date for payment thereof, the period beginning on such due date and ending on the date upon which the obligation of the Central Bank to pay such amount (the balance thereof for the time being unpaid being herein referred to as an "unpaid sum") is discharged shall be divided into successive interest periods in accordance with (ii) below;

   (ii)    the first interest period in relation to an unpaid sum shall commence on the original due date for payment thereof and shall end on the following Payment Date. Thereafter interest periods shall commence on each subsequent Payment Date whilst the unpaid sum or any part thereof remains outstanding and end on the next following Payment Date (or, if earlier, the date on which the obligation of the Central Bank to pay such sum is discharged);

   (iii)   during each such interest period as is mentioned in (ii) above (as well after as before judgment) an unpaid sum shall bear interest at the rate per annum which is the sum of 1 per cent. and the arithmetic mean (rounded upwards, if necessary, to the nearest 1/16 per cent., of one per cent.) of the offered quotations (for dollar deposits for a period approximately equal to such interest period appearing on the LIBO page of the Reuters' screen as at about 11.00 a.m. on the second business day prior to the first day of the relevant interest period. If on the relevant date no such quotations are shown on the LIBO page of the Reuters' screen as at or about 11.00 a.m. (or if Reuters' no longer publishes such quotations for any reason) the Trustee shall, in consultation with the Fiscal Agent, determine the rate of interest applicable in respect of any interest period at such rate as in its absolute discretion (having such regard as it shall think fit to the procedure referred to above) it shall deem fair, and reasonable in all the circumstances and such determination shall be final and binding on all concerned;

   (iv)    interest payable pursuant to this Condition 4(c) will be calculated on the basis of the actual number of days in the interest period concerned and a year of 360 days rounding the resultant figure to the nearest cent (half a cent being rounded upwards).

5. **OPTIONAL REDEMPTION**

   (a) *Optional Redemption*

   The Central Bank may, on giving not less than 30 nor more than 45 days notice to the Noteholders in accordance with Condition 13(a), prepay the whole or any part (expressed as a percentage) of any one or more instalments of all the Notes then outstanding on any Payment Date. All such prepayments shall be made to all Noteholders pro rata and without any preference.

   (b) *Purchases*

   Neither the Central Bank nor the Republic nor any agency thereof may purchase or otherwise acquire any of the Notes at any time.

6. **PAYMENTS**

   Payment in respect of the Notes will be made by dollar cheque drawn by the Fiscal Agent on a bank in New York City and mailed on the due date to the holder (or to the first named of joint holders) of such Note at his registered address as at fifteen days prior to the relevant Payment Date or (with prior arrangement with the Fiscal Agent) sent on the due date to a bank in New York City for credit to a dollar account maintained by the payee. Subject to the provisions of the Trust Deed and the Fiscal Agency Agreement all payments in respect of the Notes will be made to all Noteholders pro rata in accordance with their entitlements and without any preference. Notwithstanding anything contained in these Conditions but without prejudice to the provisions described under Condition 9 payments on the Notes are subject in all cases to any fiscal or other laws and regulations applicable thereto. The Fiscal Agent's handling charge of US$30 per payment will be for the account of the payee and will be deducted from the amount of each cheque. This charge will be waived in respect of amounts of less than US$300.

## ONS OF THE NOTES

**7. EARLY REDEMPTION IN NAIRA**

The holder of this Note may redeem this Note at any time in whole or part in Naira in accordance with the Republic's policy from time to time and otherwise on such terms as may be mutually agreed between the holder and the Central Bank.

If the proceeds of any redemption made under this Condition 7 are applied by the holder for the purposes of long term investment in Nigeria specifically approved by the Republic such investment will be treated as having been made in foreign currency and accordingly will benefit from approved status for the purposes of such matters as tax treatment and repatriation of dividends and capital in foreign currency, in accordance with the relevant laws in Nigeria in force at the time.

**8. PRESCRIPTION**

The Central Bank shall be discharged from its obligation to make any payment to the extent that such payment is duly made in accordance with these Conditions and remains unclaimed at the expiry of one year from:

(a) the date on which such payment first becomes due or

(b) if the full amount of the moneys payable on such due date has not been received by the Fiscal Agent or the Trustee on or prior to such due date, the date on which such moneys are so received by the Fiscal Agent or the Trustee.

**9. TAXATION**

All payments by the Central Bank and the Republic under the Notes will be made without withholding or deduction for, or on account of, any present or future taxes or duties of whatever nature imposed or levied by, or on behalf of, the Republic or any jurisdiction in which the specified office of the Fiscal Agent is located from which payment under the Notes is made or any authority therein having power to tax or levy duties, unless the Central Bank or the Republic or, as the case may be, the Fiscal Agent is compelled by law to withhold or deduct such taxes or duties. In such case, the Central Bank or (as the case may be) the Republic will pay such additional amounts as will ensure that the net amount receivable by the Noteholders after such withholding or deduction shall equal the amount which would have been receivable in respect of the Notes in the absence of such withholding or deduction provided that no such additional amount shall be payable in respect of any Note to or to a third party on behalf of a holder who is liable to such taxes or duties by reason of his having some connection with the Republic or any jurisdiction from which payment is made as aforesaid other than the mere ownership of the Note or who, by delivering a declaration of non-residence or taking similar action, would be entitled to receive payment under the Notes without any such deduction or withholding.

**10. ACCELERATION**

If any of the following events shall occur:

(a) there is default for more than 30 days in the payment of any sum due and payable on or in respect of any Note; or

(b) the Central Bank or the Republic shall fail duly to perform or observe any other term, undertaking or agreement contained in the Notes or the Trust Deed for a period of 30 days after the date on which written notice of such failure requiring the Central Bank or (as the case may be) the Republic to remedy the same shall first have been given to the Central Bank or (as the case may be) the Republic by the Trustee; or

(c) any External Indebtedness of the Central Bank or the Republic (i) is not paid when due or within any applicable grace period, or (ii) is, or becomes capable of being, validly declared prematurely due and payable by reason of any event of default (howsoever called). "External Indebtedness" means any indebtedness in respect of money borrowed or raised by way of financing or refinancing which is (a) denominated or payable in the option of the debtor or creditor in a currency other than Naira, or (b) owed to any person not resident in, or whose principal or lending office is situate outside, the Federal Republic of Nigeria

then the Trustee shall, in the case of any event described in (a) above if so instructed by any Noteholder(s) the aggregate amount of whose outstandings equals or exceeds twenty five per cent. of the aggregate amount of all the outstandings or by an Extraordinary Resolution and, in the case of any event described in (b) or (c) above if so instructed by any Noteholder(s) the aggregate amount of whose outstandings equals or exceeds fifty per cent. of the aggregate amount of all outstandings, by notice to the Central Bank demand repayment of the Notes on such date as it may specify in such notice (whereupon the same shall become due on such date) Provided that such a notice may not be given if such event is no longer continuing or has been remedied in a manner satisfactory to Noteholder(s) the aggregate amount of whose outstandings equals or exceeds twenty five per cent. of the aggregate amount of all the outstandings or as approved by an Extraordinary Resolution.

**11. ENFORCEMENT**

At any time after the Notes shall have become due and repayable, the Trustee shall, without further notice, institute such proceedings against the Central Bank and the Republic as it may think fit to enforce repayment thereof together with accrued interest and to enforce provisions of the Trust Deed if (a) it shall have been so directed by an Extraordinary Resolution of the Noteholders or so requested in writing by any Noteholder(s) the aggregate amount of whose outstandings equals or exceeds twenty five per cent. of the aggregate amount of all the outstandings and (b) it shall have been indemnified to its satisfaction. No Noteholder shall be entitled to proceed directly against the Central Bank or Republic unless the Trustee, having become bound so to proceed, fails to do so and such failure is continuing.

**12. REPLACEMENT OF NOTES**

Should any Note be lost, stolen, mutilated, defaced or destroyed it may be replaced at the specified office of the Registrar, upon payment by the claimant of the expenses incurred in connection therewith and on such terms as to evidence and indemnity as the Central Bank may require. Mutilated or defaced Notes must be surrendered before a replacement will be issued.

**13. NOTICES**

All notices regarding the Notes will be valid if:

(a) mailed to each Noteholder at his registered address and shall be deemed received on the fifth business day (as defined in Condition 4) after the date of posting;

or (at the option of the Central Bank and with the agreement of the Trustee)

(b) published in one leading daily newspaper in London or, if this is not possible, in one other leading English language daily newspaper with general circulation in Europe. It is expected, however, that publication of notices in newspapers will normally be made in the Financial Times. Any such notices shall be deemed to have been given on the date of such publication or, if published more than once, on the date of the first such publication.

**14. THE FISCAL AGENT AND THE REGISTRAR**

The initial specified offices of the Fiscal Agent and the Registrar are set out below. The Central Bank reserves the right at any time to vary or terminate the appointment of the Fiscal Agent or the Registrar and to appoint a substitute Fiscal Agent or Registrar approved by the Trustee and to nominate additional specified offices of the Fiscal Agent or the Registrar. Any variation, termination, appointment or nomination shall only take effect (other than in the case of insolvency, when it shall be of immediate effect) after not more than 45 nor less than 30 days' prior notice thereof shall have been given to the Noteholders in accordance with Condition 13.

**15. TRUSTEE, MEETINGS OF NOTEHOLDERS, MODIFICATION, WAIVER**

The Trust Deed contains provisions regulating the rights and duties of the Trustee and for its relief from responsibility and the convening of meetings of Noteholders (and the establishment of a quorum thereof) to consider any matter affecting their interests, including the modification by Extraordinary Resolution of the terms and conditions of the Notes or the provisions of the Trust Deed. An Extraordinary Resolution passed at any meeting of Noteholders will be binding on all Noteholders, whether or not they are present at the meeting. The Trustee may agree, without the consent of the Noteholders, to any modification (subject to certain exception) of, or to the waiver or authorisation of any breach or proposed breach of any of the provisions of the Trust Deed which is not, in the opinion of the Trustee, materially prejudicial to the interests of the Noteholders or to any modification which is to correct a manifest error. Any such modification, waiver or authorisation shall be binding on the Noteholders and, unless the Trustee agrees otherwise, any such modification shall be notified to the Noteholders as soon as practicable thereafter.

**16. LAW, WAIVER AND JURISDICTION**

The Trust Deed and the Notes shall be governed by and construed in accordance with English law. In the Trust Deed the Central Bank and the Republic waive to the fullest extent possible all immunity from suit, jurisdiction, execution and attachment and submit to the non-exclusive jurisdiction of the High Court of Justice in England, the Courts of the State of New York and the Courts of the United States of America sitting in New York City. The Central Bank and the Republic will ensure, so long as any Note remains outstanding, that there shall be persons in London and New York City duly appointed to accept service of process in respect of the Trust Deed and the Notes.

| FISCAL AGENT | REGISTRAR |
|---|---|
| The Chase Manhattan Bank, N.A. | The Chase Manhattan Bank, N.A. |
| *Specified Office* | *Specified Office* |
| Corporate Trust Administration | Corporate Trust Administration |
| One New York Plaza 14, | One New York Plaza 14, |
| New York, N.Y. 10081 U.S.A. | New York, N.Y. 10081 U.S.A. |

# EXHIBIT B

Von: Paying Agency Inquiries [mailto:paying.agency.inquiries@jpmchase.com]
Gesendet: Freitag, 3. September 2010 17:35
An: Leo Granziol
Cc: Paying Agency Inquiries; Ahmed F Baraka; 'Marc Perkins'
Betreff: RE: Caseca AG. Requiered Surety Bond for payout from JPM Chase on Bank of Nigeria/April 5TH, 1988 to Jan 5TH 2010.

Sir,

Please see attached document.  All checks for tax year 2009 has been released and cashed.  The final payments for tax year 2010 is still on hold until JPMorgan Chase receives the original certificates or a Surety Bond.  If you have any questions, please contact me.  Thank you.

William H. Lassiter • Treasury & Securities Services • (p) 813-432-7053 • (f) 813-432-7360

IRS Circular 230 Disclosure:
JPMorgan Chase & Co. and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, in connection with the promotion, marketing or recommendation by anyone unaffiliated with JPMorgan Chase & Co. of any of the matters addressed herein or for the purpose of avoiding U.S. tax-related penalties.

----- Forwarded Message -----
**From:** William H Lassiter <william.h.lassiter@chase.com>
**To:** Marc Perkins <mperkins10003@yahoo.com>
**Cc:** Ahmed F Baraka <Ahmed.F.Baraka@jpmchase.com>; Paying Agency Inquiries <paying.agency.inquiries@jpmchase.com>
**Sent:** Wed, October 6, 2010 11:45:15 AM
**Subject:** CASECA A G

Sir,

Please see attached spread sheet for Caseca.  Your final payment amounts are highlighted in green.  Thank you

William H. Lassiter • Treasury & Securities Services • (p) 813-432-7053 • (f) 813-432-7360

IRS Circular 230 Disclosure:
JPMorgan Chase & Co. and its affiliates do not provide tax advice. Accordingly, any discussion of U.S. tax matters contained herein (including any attachments) is not intended or written to be used, and cannot be used, in connection with the promotion, marketing or recommendation by anyone unaffiliated with JPMorgan Chase & Co. of any of the matters addressed herein or for the purpose of avoiding U.S. tax-related penalties.

1

Interest 2009 on Cascea's BK OF NIGERIA NOTES (last payment should have been on 1(
J.P.Morgan Cusip # 152455

| PN's # | Cusip # | Amount US$ | Interest 31/03/09 paid US$ | Interest 30/06/09 paid US$ | Interest 30/09/09 paid US$ | Interes 31/12/0 US$ |
|---|---|---|---|---|---|---|
| RB 1746 | 152455AR2 | 164,371.00 | 3,257.42 | 3,257.42 | 3,257.42 | 3,257 |
| RB 12197 | 152455AP6 | 24,488.00 | 648.60 | 648.60 | 648.60 | 648 |
| RB 1628 | 152455AE1 | 586,181.00 | 12,865.25 | 12,865.25 | 12,865.25 | 12,865 |
| RB 4430 | 152455AG6 | 3,763,653.00 | 82,765.67 | 82,765.67 | 82,765.67 | 82,765 |
| RB 2435 | 152455AF8 | 29,243.00 | 613.31 | 613.31 | 613.31 | 613 |
| RB 4970 | 152455AJ0 | 32,017.00 | 674.34 | 674.34 | 674.34 | 674 |
| RB 9446 | 152455AN1 | 420,547.00 | 11,623.99 | 11,623.99 | 11,623.99 | 11,623 |
| RB 13378 | 152455AQ4 | 536,750.00 | 14,844.15 | 14,844.15 | 14,844.15 | 14,844 |
| RB 7264 | 152455AM3 | 2,006,981.00 | 55,586.46 | 55,586.46 | 55,586.46 | 55,586 |
| RB 12024 | 152455AP6 | 629,044.00 | 17,401.76 | 17,401.76 | 17,401.76 | 17,401 |
| RB 5177 | 152455AK7 | 450,157.00 | 9,872.90 | 9,872.90 | 9,872.90 | 9,872 |
| RB 5303 | 152455AL5 | 381,447.00 | 8,361.36 | 8,361.36 | 8,361.36 | 8,361 |
| | US$ | 9,024,879.00 | 218,515.21 | 218,515.21 | 218,515.21 | 215,257 |
| | | | rcvd 30.04.09 | rcvd 23.07.09 | rcvd 28.10.09 | |

# EXHIBIT C

# CASECA  AG

GOTTHARDSTRASSE 18
6300 ZUG
SWITZERLAND

TEL.: (022) 36 57 60
TELEX: 27 529 MAYO CH

The Chase Manhattan Bank, N.A.
Corporate Bond Conversion Unit
Box 2063
New York, N.Y. 10081
U.S.A.

10th May 1988
CH-6300 Zug

Dear Sirs,

### Central Bank of Nigeria Notes

We refer to your recent circular concerning the exchange of Notes. We are
the registered holders of the following 'old' notes:

| Note Numbers | | Principal Amount |
|---|---|---|
| RB  12197 | US$ | 24'488.00 |
| RB   4970 | US$ | 32'017.00 |
| RB   2435 | US$ | 29'242.00 |
| RB   5303 | US$ | 381'447.00 |
| RB   7264 | US$ | 2'006'981.00 |
| RB   4430 | US$ | 3'763'653.00 |
| RB  12024 | US$ | 629'044.00 |
| RB   1628 | US$ | 586'181.00 |
| RB  13378 | US$ | 536'750.00 |
| RB   5177 | US$ | 450'157.00 |
| RB   9446 | US$ | 420'547.00 |
| Total Number of Notes    11    Total    US$    8'860'508.00 | | |

At the time of the Wembley meeting on 14th January 1988, these notes were
held physically by our duly apointed representative, Mr. M. Welsh. Most unfor-
tunately Mr. Welsh died very suddenly a few days after the meeting, and since
that time we have been unable to trace the location of the Notes.

. . ./. . .

- 2 -

We should therefore be most grateful if you would forward to us the necessary
forms to enable such matter to be formally recorded, and to enable thereafter
the issue of the New Notes.

Thanking you in advance, we remain,

Yours faithfully,
CASECA A.G.

M.T. Stott

cc: Dr. L. Granzicl

Chase Securities Processing Corporation
Estoppel
Box 2064
New York, New York 10081

 **CHASE**

May 23, 1988

10553 00 CASECA AG
Gotthardstrasse 18
CH - 6300 ZUG
Switzerland

                          Re:    Central Bank of Nigeria
                                 U S Note Recon #6
                          Bond#: RB 4970 for $32,017
                          R/N/0: 10553 00 CASECA AG

Dear Sir/Madame:

This will acknowledge receipt of your communication regarding
the loss of securities for the subject account.

We placed stops against the transfer of the security.

The enclosed Bonds of Indemnity must be in Open Penalty Form,
executed by the registered owner(s) and by a reputable Surety
Company authorized to transact business in the State of New
York.  EACH BOND IS ACCOMPANIED BY A SET OF INSTRUCTIONS.
PLEASE READ THEM CAREFULLY.

On receipt of the bonds, your application will be given prompt
attention.

Should You have any difficulty in contacting a local insurance
company and if you so choose, you may contact:

                    FSU Associates Inc
                    193 Satterthwaite Ave
                    Nutley, NJ 07110
                    Attn: William J Spaar Jr
                    Tel: (201) 661-1920

IF THE ABOVE SHARES ARE REGISTERED IN THE NAME OF A COMPANY,
CORPORATION, INVESTMENT CLUB, BUSINESS, ETC. WE MUST BE
FURNISHED WITH A RESOLUTION AUTHORIZING YOU TO EXECUTE THE
AFFIDAVITS ON THEIR BEHALF.

                    Very truly yours,

                    Linda D'Angelo
                    Lost Securities Department
                    (201) 592-4702

(1094C)

## STATEMENT ON BEHALF OF CASECA AG

I, JOHN GERALD POOLES of 8  Mizen Way, Cobham, Surrey  KT11 2RE, consultant,
do hereby declare and say as follows:-

1.     I am a Member of the Institute of  Export and have been involved in
international commerce for many years.  I do and have from time to time
represented the interests of Caseca AG, a Swiss corporation, in the United
Kingdom.

2.     On 14th January, 1988 I accompanied Mr John Welsh ("Mr Welsh"), who
regularly represented Caseca AG in the United Kingdom, to a meeting at Wembley
Conference Centre, London with representatives of The Central Bank of
Nigeria.  The purpose of this meeting was to renegotiate the terms of certain
Promissory Notes granted by The Central Bank of Nigeria to Caseca AG ("the
Notes"), details of which are set out in Schedule 1 hereto.  It was stated in
the notice of arrangements for that meeting that production of the Notes would
be required to gain admittance to the meeting.  The Notes had been retained by
Caseca AG's bankers, Bank Julius Baer & Co. AG in Zurich but were delivered by
courier to Mr Welsh prior to that meeting.  Despite our information, the Notes
did not require to be produced at that meeting.  Although I did not see them,
Mr Welsh informed me that he had the Notes in his possession at that meeting.

3.     Mr Welsh was a former manager of Barclays Bank in Lagos, Nigeria and
the former company secretary of a large international company.  He had
represented Caseca AG in the United Kingdom for about 3 years and, from my own
experience, was efficient, organised and punctilious in his business dealings.

-2-                                        (1094C)



4.    At the meeting at Wembley Conference Centre the terms of the Notes were
renegotiated.  There is set out in Schedule 2 hereto a letter dated 4th March,
1988 from Central Bank of Nigeria to the holders of the Notes setting out the
procedure for the issue of new Notes incorporating the revised terms and
conditions.


5.    Shortly after the meeting on 14th January, 1988 Mr Welsh became aware
that he was terminally ill.  Before his death Mr Welsh had agreed to meet with
Mr Hyles Stott, a representative of Mayo Associates S.A., a Swiss Corporation
which represents Caseca AG in Switzerland and internationally, and myself to
hand over to us the files and papers which he had in relation to Caseca AG.
Before that meeting Mr Welsh had to return to hospital and accordingly Mr
Stott and I were required to go through his files, and take the files and
papers relative to Caseca AG, without his assistance.  Due to the volume of
papers involved Mr Stott took only urgent papers and the others were forwarded
to Mr Stott's office in Geneva by courier.  At that meeting no specific
mention was made of the Notes and we did not specifically look for the Notes
amongst Mr Welsh's papers.  Mr Welsh died on 7th February, 1988.


6.    Some months after this Mr Stott contacted me to ascertain whether I
knew the whereabouts of the Notes.  I did not, having assumed that they were
in the bundle of papers which had been taken by or couriered to Mr Stott.  He
informed that they were not in these papers and had not been returned to Bank
Julius Baer & Co. AG.




-3-                                                          (1094C)

7.     I then revisited Mr Welsh's house, which he also used as his office, and again searched through the papers which he had left. I did not find the Notes.

8.     In an effort to trace the Notes I checked all invoices which had been received in respect of an account which I maintain with DHL Couriers, and which Mr Welsh was in the habit of using. From these invoices I discovered that a package had been handed in at DHL's Hatton Cross office on 25th January, 1988 for delivery to Caseca AG. This package was never delivered. DHL have since declared the package lost. A copy of the letter from DHL notifying me of this forms Schedule 3 hereto. I am unaware of the contents of this package and have no evidence to indicate that it did or did not contain the Notes. However, from my knowledge of Mr Welsh's efficiency in business matters, I believe it is reasonable to assume that he would have attempted to return the Notes to Caseca AG.

9.     The Chase Manhattan Bank NA, acting as agents of the Central Bank of Nigeria, were informed of the loss of the Notes by letter dated 10th May, 1988. A copy of this letter forms Schedule 4 hereto.

10.    In their response to that letter, dated 23rd May, 1988, Chase Securities Processing Corporation informed Caseca that they had placed stops against the transfer of each of the Notes. A copy of this response forms Schedule 5 hereto.

-4-                                                    (1094C)

11.   Having pursued as far as possible all lines of enquiry open to me I am
of the belief that the Notes have been lost.


DECLARED AT                     )
24, St. Mary Axe, London,       )
England                         )

this twenty-seventh day of      )

September    1988.              )

Before Me,                      )



NOTARY PUBLIC


      Notary Public London, England
          (Richard J. Saville)

# EXHIBIT D

# CASECA AG

BAHNHOFSTRASSE 32
6300 ZUG
SWITZERLAND

TEL (041) 726 07 60
FAX (041) 726 07 66
E-MAIL: office-zug@nobel-hug.ch

Our Ref:      AB/LG

4 February 2010

JP Morgan Chase
4 New York Plaza 11ᵗʰ Floor
Attention: Central Bank of Nigeria New York
NY 10004
USA

*By DHL – awb no 439 4377 853*

Mr William H. Lassiter – Treasury & Securities Services

## Re: Central Bank of Nigeria Notes – final payment

Dear Sirs

This present letter will represent our formal request for the final remittance of the interest of the twelve promissory notes registered in our name as holder of the notes, amount of USD 218,515.21.

In the year 1988, eleven of the twelve notes were lost and have been formally declared to The Chase Manhattan Bank, New York. We submit herewith copies of the documents which will serve as evidence of lost:

1. Our declaration letter dated May 10, 1988.
2. Chase Securities Processing Corporation's reply to acknowledge receipt of our declaration dated May 23, 1988.
3. Copy of the affidavit which recites the circumstances of the lost.

You will also find enclosed, the original of the twelfth notes registered under the number RC 1746 for an amount of USD 164,371.00.

We trust that these documents will meet your requirements for the settlement of the interests overdue.

We thank you in advance and look forward to hearing from you soon.

Yours faithfully,

*Dr. Leo Granziol*

<u>Legalization</u>

The undersigned lic. iur. Oliver Habke, Attorney-at-Law and Notary Public of the Canton of Zug, Switzerland, with his office at Bahnhofstrasse 32, 6300 Zug, Switzerland, certifies that the signature on the front side of this document of Dr. Leo Granziol, from Zug, Switzerland, with residence in 6300 Zug, Switzerland, is authentic.

Further it is confirmed that Dr. Leo Granziol is sole member of the Board of Directors and has sole signature for Caseca AG, 6300 Zug / Switzerland.

Zug, February 4, 2010                                            The Notary Public:

# CASECA AG

GOTTHARDSTRASSE 18
6300 ZUG
SWITZERLAND

TEL.: (022) 36 57 60
TELEX: 27 529 MAYO CH

The Chase Manhattan Bank, N.A.
Corporate Bond Conversion Unit
Box 2063
New York, N.Y. 10081
U.S.A.

10th May 1988
CH-6300 Zug

Dear Sirs,

### Central Bank of Nigeria Notes

We refer to your recent circular concerning the exchange of Notes. We are the registered holders of the following 'old' notes:

| Note Numbers | | | Principal Amount |
|---|---|---|---|
| RB | 12197 | US$ | 24'488.00 |
| RB | 4970 | US$ | 32'017.00 |
| RB | 2435 | US$ | 29'243.00 |
| RB | 5303 | US$ | 381'447.00 |
| RB | 7264 | US$ | 2'006'981.00 |
| RB | 4430 | US$ | 3'763'653.00 |
| RB | 12024 | US$ | 629'044.00 |
| RB | 1628 | US$ | 586'181.00 |
| RB | 13378 | US$ | 536'750.00 |
| RB | 5177 | US$ | 450'157.00 |
| RB | 9446 | US$ | 420'547.00 |
| Total Number of Notes | 11 | Total   US$ | 8'860'508.00 |

At the time of the Wembley meeting on 14th January 1988, these notes were held physically by our duly apointed representative, Mr. M. Welsh. Most unfortunately Mr. Welsh died very suddenly a few days after the meeting, and since that time we have been unable to trace the location of the Notes.

. . ./. . .

- 2 -

We should therefore be most grateful if you would forward to us the necessary
forms to enable such matter to be formally recorded, and to enable thereafter
the issue of the New Notes.

Thanking you in advance, we remain,

Yours faithfully,
CASECA A.G.

M.T. Stott

cc: Dr. L. Granzici



U.S. Department of Justice

United States Marshals Service
*Southern District of New York*

---

*500 Pearl Street, Suite 400*
*New York, New York 10007*

*Telephone (212) 331-7200*
*Facsimile (212) 637-6130*

December 8, 2010

The Berkman Law Office, LLC
111 Livingston Street, Ste. 1928
New York, NY 11201

      RE:    Calderon-Cardona, et al vs. The Democratic People's Republic of Korea, et al,
              M18302-166

Dear Sir/Madam:

    Enclosed is a copy of a response received from JP Morgan Chase Bank in regard to Writ of Execution in the above entitled action.

                                  Very truly yours,

                                    Joseph R. Guccione
                                    United States Marshal
                                    Southern District of New York

                By:

                                      Joann Goodson
                                    Property Management Specialist

Enc:JG

# JPMorganChase ⬡

Court Orders and Levies
OH1-1283
340 South Cleveland Avenue
Westerville, OH 43081-8917

Monday, November 29, 2010

Joann Goodson
United States Marshals Service
500 Pearl Street, Suite 400
New York, NY 10007

RE: Calderon-Cardona, et al vs. Democratic People's Republic of Korea, et al
Case Number: M18302-166

JPMorgan Chase Bank, N.A. ("JPMC") recently received a Writ of Execution from your office
against the above referenced debtor(s).

JPMC conducted a search of its current systems of the named judgment debtors and no record of
the defendant was located with the information provided.

Please allow this letter to serve as JPMC's answer to the Writ of Execution. If you should have any questions
regarding this matter, please contact me at (888) 556-5377 between the hours of 8:00am-8:00pm CST.

Very truly yours,

Linda N. Young
Risk Ops Analyst III
JP Morgan Chase Bank N.A.
Court Orders and Levies

ALL-STATE LEGAL®
07191-BF • 07192-EL • 07193-GY • 07194-WH
800.222.0510 www.aslegal.com

Index No. *115678*          Year 20 *10*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

=================================================================

CASECA AG,

                                            Plaintiff,

    -against-

THE CENTRAL BANK OF NIGERIA and JP MORGAN CHASE & CO.,

                                            Defendants.

=================================================================

## SUMMONS & NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT, AFFIRMATION IN SUPPORT, AFFIDAVIT IN SUPPORT & EXHIBITS

=================================================================

PEARLMAN, APAT, FUTTERMAN, SIROTKIN & SEINFELD, LLP
   *Attorneys for*
                         Plaintiff
             80-02 KEW GARDENS ROAD, SUITE 5001
              KEW GARDENS, NEW YORK 11415
                    (718) 261-9460
                  FAX (718) 261-0479

=================================================================

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* ...........................     Signature ................................................................

                              Print Signer's Name................................................

*Service of a copy of the within*                                   *is hereby admitted.*

*Dated:*

                      .............................................................................
                                  *Attorney(s) for*

=================================================================

## PLEASE TAKE NOTICE

☐     *that the within is a (certified) true copy of a*
NOTICE OF    *entered in the office of the clerk of the within-named Court on*                    20
ENTRY

☐     *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF    *Hon.*                                  *, one of the judges of the within-named Court,*
SETTLEMENT    *at*
              *on*                    20      *, at*              *M.*

*Dated:*

                      PEARLMAN, APAT, FUTTERMAN,
                      SIROTKIN & SEINFELD, LLP
             *Attorneys for*

*To:*                                  80-02 KEW GARDENS ROAD, SUITE 5001
                                  KEW GARDENS, NEW YORK 11415
                                         (718) 261-9460